**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 08 CR 609 |
| | ) | |
| PEDRO SANCHEZ-GONZALEZ | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Pedro Sanchez-Gonzalez waived indictment and pled guilty to a charge of illegal reentry to the United States after deportation due to commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a). Under the Sentencing Guidelines, Mr. Sanchez-Gonzalez's criminal history is category VI, and his offense level is 21. The advisory range under the Guidelines is 77 to 96 months.

Mr. Sanchez-Gonzalez has asked the Court to impose a sentence below the advisory range. He bases this request, in part, on his contention that a within-Guidelines sentence would result in an unwarranted sentencing disparity, contrary to Congress' directive to sentencing judges to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Mr. Sanchez-Gonzalez premises this argument on the fact that in approximately sixteen judicial districts, a defendant who, like Mr. Sanchez-Gonzalez, enters a prompt guilty plea to an illegal reentry charge obtains, or at least is eligible for, an agreed-upon below-Guidelines sentence. Based on the information provided to the Court, this

occurs in some districts via charge bargaining – in other words, an agreement permitting the defendant to plead guilty to a charge that effectively caps his sentence – and in some districts through an agreed-upon reduction in the Guidelines offense level. Based upon the information provided, it appears, and the Court assumes, that had Mr. Sanchez-Gonzalez been charged in one of those districts, he would face a sentence of thirty months imprisonment at the lowest and eighty-seven months at the highest. The average is roughly fifty-one months.[1]

In *United States v. Medrano-Duran*, 386 F. Supp. 2d 943 (N.D. Ill. 2005), this Court accepted a similar argument and concluded that the unavailability in this district of an early disposition or "fast track" program created an unwarranted disparity between the defendant in that case and similarly situated defendants charged in districts that had such a program.

In 2003, Congress adopted the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, otherwise known as the "PROTECT Act." Section 401(m)(2)(B) of the PROTECT Act directed the Sentencing Commission to -

> promulgate, pursuant to section 994 of title 28, United States Code-
>
> . . .
>
> (B) a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney ....

---

[1] The government contends that certain aspects of Mr. Sanchez-Gonzalez's criminal history would render him ineligible for consideration of a reduced in any district. The defense has persuasively shown, however, that this is incorrect.

Pub. L. 108-21, § 401(m)(2)(B).  Pursuant to Congress' directive, the Sentencing Commission adopted the following policy statement in October 2003:

> Early Disposition Programs (Policy Statement)
>
> Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

U.S.S.G. § 5K3.1.

In *United States v. Martinez-Martinez*, 442 F.3d 539 (7th Cir. 2006), the Seventh Circuit rejected an argument similar to the one this Court had accepted in *Medrano-Duran*.  The court, referring to the above-quoted provision of the PROTECT Act, stated that "Congress has . . . indicated its approval of fast-track procedures" in illegal reentry cases.  *Id.* at 542.  Citing a House of Representatives report regarding companion legislation, the court stated that Congress

> intended to provide relief to districts with crowded immigration dockets by recognizing the authority of the courts to grant "limited departures" in accordance with structured early disposition programs.  Yet, the report noted that such programs should be reserved for offenses "whose high incidence within the district has imposed an extraordinary strain on the resources of that district as compared to other districts."  Congress thus recognized that disparities would exist between the sentences of those in fast-track jurisdictions and those outside of those jurisdictions.  Congress further noted that its recognition of early disposition programs "does not confer authority to depart downward on an ad hoc basis in individual cases."

*Id.* at 542 (citing H.R. Rep. No. 108-48, at 7 (2003)).  Relying on this legislative record, the Seventh Circuit concluded that

> [g]iven Congress' explicit recognition that fast-track procedures would cause discrepancies, we cannot say that a sentence is unreasonable simply because it was imposed in a district that does not employ an early

3

> disposition program. Congress simply has authorized prosecutorial authorities to weigh the benefits of a longer sentence against the burdens of delay and oppressive case management issues and, in such situations, to determine that the public good requires that the latter value be given preference.

*Id.*

The defendant in *Martinez-Martinez* also argued that because courts in some districts without fast-track procedures had imposed below-Guidelines sentences in illegal reentry cases to avoid sentencing disparity, his within-Guidelines sentence was reasonable. The Seventh Circuit rejected this argument, stating that the fact "[t]hat some courts have chosen to avoid disparity does not mean that all district courts are compelled to adjust a sentence downward from the advisory guidelines range in order for that sentence to be reasonable." *Id.* at 543.

In *Martinez-Martinez*, the defendant was challenging a sentencing judge's decision not to impose a below-Guidelines sentence. That, plus the language the Seventh Circuit used in the passage quoted immediately above, left open the possibility that although the court had turned down a challenge to a judge's decision not to adopt a fast-track disparity argument, it might nonetheless approve some other judge's decision to accept such an argument. The court quickly closed that window, however, in *United States v. Galicia-Cardenas*, 443 F.3d 553 (7th Cir. 2006), in which it vacated sentences imposed by district judges who had accepted arguments similar to the one this Court had accepted in *Medrano-Duran*. The court repeated its statement in *Martinez-Martinez* that "[g]iven Congress' explicit recognition that fast-track procedures would cause discrepancies, we cannot say that a sentence is unreasonable simply because it

4

was imposed in a district that does not employ an early disposition program." *Id.* at 555 (quoting *Martinez-Martinez*, 442 F.3d at 542). "By the same logic," the court stated, "we cannot say that a sentence imposed after a downward departure is by itself reasonable because a district does not have a fast-track program." *Id. Martinez-Martinez*, the court concluded, controlled in *Galicia-Cardenas* as well.

*Galicia-Cardenas* and *Martinez-Martinez* are, of course, binding on this Court. Mr. Sanchez-Gonzalez argues, however, that the Supreme Court's intervening decision in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), permits the Court, despite the Seventh Circuit's decisions, to consider fast-track disparities as unwarranted within the meaning of section 3553(a)(6). The Court disagrees. The Supreme Court concluded in *Kimbrough* that a district court may base an outside-the-Guidelines sentence on its disagreement with the Sentencing Commission's policy decisions. The Court did not conclude, however, that a district court may base its sentence on its disagreement with Congressional directives. Indeed, the Court took some pains in *Kimbrough* to point out that the policy decision at issue there – the Sentencing Commission's adoption, in the Guidelines for narcotics cases, of a 100-to-1 ratio treating every gram of crack cocaine as the equivalent of 100 grams of powder cocaine – was not the result of an express legislative directive, *id.* at 570-71, or even an implied legislative directive, *id.* at 572-73.

This Court continues to believe, as a matter of policy, that it is unjust to permit sentencing disparities based on the fortuity of the judicial district in which a defendant in an illegal reentry case is charged. And one can legitimately take issue with the proposition that *all* fast-track reductions in illegal reentry cases are the product of

5

Congress' policy statement in the PROTECT Act and the companion legislative report cited by the Seventh Circuit. As this Court pointed out in *Medrano-Duran*, and as reemphasized by the data defense counsel have submitted in the present case, a number of so-called fast-track reduction programs operate outside the bounds of Congress' directive to the Sentencing Commission and Sentencing Guideline § 5K3.1. *See Medrano-Duran*, 386 F. Supp. 2d at 946-47. That was part of the basis for this Court's determination in *Medrano-Duran* that it was appropriate to consider such disparities in determining whether to impose a below-Guidelines sentence.

One might also legitimately argue that nothing in the PROTECT Act nor the legislative report cited in *Martinez-Martinez* amounts to express or implied legislative disapproval of deviation from the Sentencing Guidelines based on inter-district disparities resulting from the Department of Justice's determination to adopt fast-track programs in some districts but not others. *See United States v. Rodriguez*, 527 F.3d 221, 229 (1st Cir. 2008). But the Seventh Circuit has taken a different course, and until it or the Supreme Court concludes otherwise, the choice is not one this Court is permitted to make.

For these reasons, the Court concludes that it is not permitted to consider, in imposing sentence in this case, the fact that a fast-track or early disposition program is not available in this District.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 9, 2009

6